[The following cases were finally disposed of previous to the June term, 1870, but, for various reasons, have not hitherto been published.]

27  349
95  374

27  349
108  33

## SEXTON VS. THE SUPERVISORS OF RICHLAND COUNTY.

*Settlement of county treasurer with county board, not conclusive.*

Where one who had been county treasurer deposited moneys with the clerk of the county board, as security for any amount which might be found due from him as such treasurer, and afterwards brought suit for such moneys, alleging that there had been a correct final settlement between him and the county, and that there was nothing due from him to the county : *Held,*

1. That the court might go behind such settlement, even after the lapse of six or seven years.
2. That upon satisfactory evidence of a mistake in such settlement, and that there was in fact a balance due from the plaintiff, judgment was properly rendered against him, notwithstanding an alleged loss of vouchers used upon such settlement ; especially where he did not show what those vouchers were, and for what purposes the amounts named therein were paid.

Per PAINE, J., dissenting :

1. The settlement should not be set aside without clear and positive proof of mistake.
2. The facts that the board, in such settlement, charged plaintiff with a larger amount of receipts, as well as credited him with larger disbursements ; that his own books were then disregarded as incorrect, both in debits and credits, and he was required to produce vouchers for all credits allowed him ; and that these vouchers have since in part perished—forbid the setting aside of such settlement without the clearest proof of mistake ; and the proof here was insufficient.

APPEAL from the Circuit Court for *Richland* County.

The plaintiff held the office of treasurer of said county during the years 1861 and 1862. In November, 1861, he had an accounting and settlement with the board of supervisors. A committee of three members of the board examined his books, and found both the debits and credits so erroneous and confused (some errors being in his favor, and others in favor of the county), that they rejected the books, and ascertained the receipts of the office from other sources, and required him to produce proofs from other sources than his books of all disbursements allowed. They reported to the board, that he had received $25,677.13 (giving the items), and had disbursed $26,592.46, "for all of which," they stated, "we find satisfactory vouchers and evidences that it had been paid;" and, after deducting an error in the footings, they found due the plaintiff a balance of $618.33. The board accepted the report, and settled with the plaintiff upon the basis thereof; and, at the end of 1862, had a full and satisfactory settlement for that year. In 1863, the county board, discovering mistakes in plaintiff's books, threatened him with a suit; and, for the purpose of protecting his bondsmen, he deposited with the clerk of the board money and securities amounting to $1,000. In 1866, he demanded a return of this deposit, on the ground that he did not owe the county anything; and, a return being refused, he brought this action to recover the amount so deposited.

The cause was referred to a commissioner to take testimony and report the facts; and he reported, as a part of his finding, that the defendants had failed to establish, by evidence, that there was any mistake in said settlement of 1861; that they had "failed to prove that the vouchers which they produced in support of their defense, did not but ought to have

Sexton vs. The Supervisors of Richland County.

entered into said settlement;" and that "a large number of the vouchers between the towns and the county, and also between the plaintiff and the county, which constituted the basis of the settlement of 1861," had been lost; so that it was impossible to ascertain whether any mistake occurred in that settlement or not. The referee therefore reported that there was due plaintiff from defendants said sum of $1,000, with interest, etc.

On exceptions to the report, and cross motions in relation thereto, the court found as facts: 1. That the defendants had established, by evidence, that there was a mistake in said settlement of 1861. 2. That defendants had proved that the vouchers produced in support of the defense did enter into that settlement. 3. That if any vouchers had been lost, their contents were proven by other documentary evidence equally worthy of credit (specifying them, or some of them). 4. That at the time plaintiff deposited the $1,000, he was indebted to defendants in a still larger sum.

Judgment was accordingly rendered in defendants' favor for costs, etc.; and the plaintiff appealed.

*Eastland & Cothren,* for appellant.

*Black & Miner* (with *S. U. Pinney,* of counsel), for respondents.

The decision in this cause was announced at the January term, 1870.

DIXON, C. J. The circuit court did not feel called upon to go through and enter item by item into a computation of the accounts showing the indebtedness of the plaintiff to the county, and we do not. It would be a tedious and useless task. It is enough to say, that if the several witnesses examined on the part of the county are to be believed at all—and their correctness and veracity are certainly not impeached—the indebtedness found was established beyond any reasonable doubt. It is also enough to

say of the objection so strongly urged for the plaintiff, that the vouchers were destroyed and original sources of information gone, and therefore the settlement of 1861 ought not to be re-examined or departed from, that such objection is unsustained by the facts. The plaintiff was an officer engaged in the transaction of public business, and bound by his oath and by law so to transact it and to keep the books, papers and records of his office that serious mistakes and difficulties of the kind complained of would not have occurred. Without any imputation against his integrity, it was found that his books were so kept that no reliance whatever could be had upon them. The fault was, therefore, originally with the plaintiff. The committee of 1861 had recourse to other sources of information. The several witnesses for the county, who have since gone over the same ground, had recourse to the same sources of information. The testimony of those witnesses, as well as an examination of the law, shows that the public money coming into the hands of the county treasurer is derived from a very few sources. It comes from the several town treasurers, of the state and county tax, from delinquent returns from the several towns, from the clerk of the circuit court for tax on suits, and from justices of the peace for fines and forfeitures. The testimony of the same witnesses, and the provisions of law, also show that the money thus received by him is disbursed in but a few ways. It is paid to the state treasurer, to individuals on orders of the county board, to town treasurers, and to town superintendents of schools. Now it is obvious that there should still continue to exist in the various offices other than that of the county treasurer, the same original evidences of the receipt and disbursement of the money, as existed in 1861; and when the witnesses testify that they do so exist, and that they have examined them, and gone through all the accounts in detail, and that the result shows

that the plaintiff was indebted to the county, the majority of this court are not inclined to doubt the truth of such statements.   The testimony with respect to the lost vouchers is very vague and unsatisfactory.   It comes from the plaintiff himself, who says that the vouchers were left in the office of the county treasurer after the expiration of his term, except some which he took away with him.   He gives no information as to what the vouchers were, or for what the money was paid out; and as it is impossible to conceive any lawful purpose to which the money could have been applied, except the same were shown by other documents and papers still in existence, we are compelled to hold that such alleged loss constitutes no obstacle to a re-examination of the accounts.   We think the mistake in the settlement was satisfactorily established, and that the judgment should be affirmed.

PAINE, J.   The plaintiff, at the end of the first year of his term of office as county treasurer, had a full and fair settlement with the board for that year. Several years after this, and after the expiration of his term, it was claimed that there was a deficit in his account for the first year, and suit was threatened. To relieve his bail from apprehension, he deposited securities, to the amount of a thousand dollars, with the clerk of the board, which were to stand as security for any amount he might be found to owe the county. As no suit was brought against him, he subsequently brought this suit to recover the amount of those securities.   There was nothing in this transaction of the deposit that can have any just effect to deprive the plaintiff of all the benefit of his settlement with the county.   And although he is the plaintiff in the action, he has established a *prima facie* right to recover when he shows the settlement, according to which there was a balance in his favor; and the burden is

then on the defendant to impeach that settlement, upon grounds which would be sufficient to impeach it if the county had brought suit to recover an alleged balance due, contrary to such settlement.

It is not denied that it may be impeached for mistake; but the mistake should be clearly and definitely shown. This I think has not been done. The first committee which settled with the plaintiff was composed of competent accountants. One of them, at the time his testimony was taken, was acting as such in the office of the state treasurer. They spent several days in trying to make a settlement upon the books of the plaintiff; but they were found to be so full of errors, and so utterly unreliable, that they were rejected entirely, and the committee resorted to other sources, and required the plaintiff to produce vouchers or satisfactory evidence of everything with which they credited him. In this manner the settlement was made. Now, to show a mistake in it, the county, giving to its testimony all the effect that is claimed for it, has simply shown that the official records at the original sources from which the plaintiff would receive money, and where he would disburse it, as treasurer, do not show that he either received or paid out as much as he was charged and credited with in that settlement. It may be admitted that these official records ought to show everything. It may be admitted that they would, in the absence of any other evidence, be held to be *prima facie* correct and complete. But I do not think that is sufficient. The settlement is also presumed to be *prima facie* correct. It is sworn, by those who made it, to have been made upon satisfactory proof of every credit that was allowed. It appears that the committee charged the plaintiff with several thousand dollars more than these official records, as explored by the subsequent committee, disclosed that he had received. I cannot regard, therefore, the *prima facie* presumption of cor-

rectness and completeness attaching to the records, as amounting to that clear proof of mistake, which, by all the authorities, is required to justify a court in going behind a settlement fully and fairly made. It is no answer to say, that if the plaintiff received or paid out more than these records show, he should prove it. He did prove it on the settlement, and he is not bound to go further, until there has been a clear and satisfactory proof of a mistake. And these records are not sufficient for that purpose. He testifies that some of the vouchers that he used on that settlement were lost. And there seems to me to be an injustice in depriving him of the benefit of that fair and full examination and adjustment of his account, upon such evidence as is introduced here. I cannot assent to the decision of the court.

*By the Court.*—The judgment is affirmed.